1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Katherine Coronel, et al.,            )    No. CV-12-795-PHX-SMM
                                          )
10              Plaintiffs,               )
                                          )       **AMENDED**
11  vs.                                   )   **MEMORANDUM OF DECISION**
                                          )        **AND ORDER**
12  GEICO Ins. Agency Inc.,               )
                                          )
13              Defendant.                )
                                          )
14  _____      )

15          Pending before the Court is Defendant Government Employees Insurance Company's

16  ("GEICO") motion for summary judgment, which is fully briefed.  (Docs. 222-23, 235-36,

17  240, 247-48.)  After reviewing and considering[1] the briefs, the Court will grant in part and

18  deny in part GEICO's  motion for summary judgment.

19                       **FACTUAL BACKGROUND**

20          The following facts are undisputed.  During the early morning hours of October 28,

21  2007, Eduardo Mediavilla and Plaintiff Katherine Coronel ("Coronel"), the fiancée of

22  Eduardo, were traveling South on Interstate 17 just North of the Phoenix metro area.  (Doc.

23  235-14.)  Mr. Mediavilla was driving a 2003 Volkswagen Jetta that was owned by his father

24  Eduardo Mediavilla.  Eduardo and Coronel's minor children, A.M. (3years old) and V.M.

25

26  _____

27          [1]After reviewing the briefs and having determined that oral argument is unnecessary,
    the request for oral argument is denied because the parties have had an adequate opportunity
28  to present their written arguments; oral argument will not aid the Court's decision.  See Lake
    at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

1  (19 months old) were buckled in their car seats in the rear of the Jetta. Coronel was pregnant

2  with their third child, then unborn E.M. (Doc. 54.) While driving on I-17 the Jetta had a flat

3  on the driver rear tire. (Id.) Mr. Mediavilla pulled over to the shoulder in front of another

4  motorist who was also having car trouble. (Doc. 235-5.) The other motorist, Donald Crowe,

5  was attempting to help Mr. Mediavilla change his tire, however, one of the lug nuts could not

6  be removed. (Id.) Crowe and Mr. Mediavilla had decided that Mediavilla needed to drive

7  the Jetta to a service station for assistance. (Id.) As Crowe was putting up his tools and

8  facing away from Mr. Mediavilla, Mr. Mediavilla was seated in front of the Jetta's flat tire

9  when he was struck by another car that had veered off the road. (Id., Doc. 54.) Mr.

10 Mediavilla was struck by the vehicle and thrown from the rear of the car into the Jetta's front

11 wheel well, killing him. (Doc. 54.) The vehicle which struck Mr. Mediavilla did not return

12 to the scene of the accident, and the driver responsible for the accident has never been

13 located. (Id.)

14        The Jetta was owned by Mr. Mediavilla's father and was insured by GEICO. The

15 policy on the Jetta was entered into in New York by decedent's father and contained

16 uninsured/underinsured policy limits of $100,000 per person and $300,000 per occurrence.

17 (Doc. 54.) The policy contains a choice-of-law provision, which states that "the policy . . .

18 [is] to be interpreted pursuant to the laws of the state of New York." (Doc 223-1 at 59.)

19        Between the time of the accident and December 17, 2009, GEICO investigated,

20 processed, and then paid $100,000, in uninsured motorist coverage for Mr. Mediavilla's

21 wrongful death. (Doc. 235-13.) The proceeds of the wrongful death payment were split

22 between his parents ($15,000) and Mr. Mediavilla's three minor children ($85,000). (Id. at

23 24.)

24        Coronel continued to pursue a claim under the policy on behalf of herself and her

25 children alleging that due to the accident they suffered negligent infliction of emotional

26 distress ("NIED") injuries. (Doc. 54 at 5.) Regarding Plaintiffs' claims to GEICO for NIED

27 damages arising out of the accident, the material facts are set forth in the Court's discussion

28 of their claims for bystander NIED damages and direct duty NIED damages.

1    On March 11, 2011, Plaintiffs retained counsel to represent them in the claim. (Doc.
2    223-1 at 85.)  On April 20, 2011, Plaintiffs' counsel made a global settlement offer.  (Id. at
3    87-91.)  GEICO acknowledges that included with the Plaintiffs' demand letter were medical
4    records for all Plaintiffs other than E.M. (Id.)  On October 11, 2011, GEICO responded.
5    (Doc. 223-1 at 93-94.) Based on New York law, GEICO stated that it did not believe Coronel
6    was eligible for NIED damages.  (Id.)  GEICO further stated that it did not believe that A.M.
7    or V.M were eligible for NIED damages, but offered payment of $5,000 each for both A.M.
8    and V.M.  (Id.) The parties then decided to settle the claims of A.M. and V.M. for $7,500
9    each.  (Doc. 223-1 at 96.)  Plaintiffs then sought court approval of the settlement involving
10   A.M. and V.M.  (Doc. 223-1 at 98-102.)  Subsequently, on December 27, 2011, Plaintiffs
11   withdrew the Petition for Approval of Settlement and Order and filed a Complaint against
12   GEICO for breach of contract, bad faith, and punitive damages.  (Doc. 223-1 at 104, 106-
13   110.)

## STANDARD OF REVIEW

14

15   *Summary Judgment*

16       "A party may move for summary judgment, identifying each claim or defense . . . on
17   which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The court shall grant summary
18   judgment if the movant shows that there is no genuine issue as to any material fact and the
19   movant is entitled to judgment as a matter of law." Id.; see Celotex Corp. v. Catrett, 477 U.S.
20   317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.
21   1994).  Substantive law determines which facts are material.  See Anderson v. Liberty
22   Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over
23   facts that might affect the outcome of the suit under the governing law will properly preclude
24   the entry of summary judgment."  Anderson, 477 U.S. at 248.  The dispute must also be
25   genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for
26   the nonmoving party."  Id.; see Jesinger, 24 F.3d at 1130.

27       A principal purpose of summary judgment is "to isolate and dispose of factually
28   unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate

1   against a party who "fails to make a showing sufficient to establish the existence of an

2   element essential to that party's case, and on which that party will bear the burden of proof

3   at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

4   1994). The moving party need not disprove matters on which the opponent has the burden

5   of proof at trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may

6   not rest upon the mere allegations or denials of the party's pleadings, but must set forth

7   specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indus. Co.

8   v. Zenith Radio, 475 U.S. 574, 587 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d

9   1044, 1049 (9th Cir. 1995).

10                                      **DISCUSSION**

11          **I. Breach of Contract**

12          Under New York law, "in the context of insurance contracts, a 'breach' [of contract]

13   does not occur until an insured party makes demand upon the insurer and the insurer refuses

14   to pay." Continental Cas. Co. v. Stronghold Ins. Co., 866 F. Supp. 143, 145 (S.D.N.Y. 1994)

15   (citing Niagara Frontier Transp. Auth. v. Encon Underwriting Agency, Inc., 185 A.D.2d 642

16   (N.Y. App. Div. 1994) (stating that the "breach . . . occurred when the insurer denied liability

17   under the contract.") "It is only when an insurer declines to pay a covered loss for which the

18   insured has requested payment that the insurer has breached the insurance agreement by

19   failing to perform its contractual obligations." Niagara Frontier, 185 A.D.2d at 642.

20          A. Bystander NIED

21          Regarding breach of the insurance contract, the first issue is whether Coronel, and/or

22   the minor children, were entitled to bystander NIED benefits arising out of the accident.

23   Under New York law, in order to recover emotional distress damages proximately caused by

24   the accident, Coronel and/or the minor children must establish each of the following four

25   elements: (1) the plaintiff is contemporaneously aware of or witnesses; (2) serious physical

26   injury or death; (3) to an immediate family member; (4) while in the zone of danger created

27   by the hit-and-run motorist. See Bovsun v. Sanperi, 461 N.E.2d 843, 844 (N.Y. 1984).

28   Bystander recovery for NIED in New York is a narrow avenue. See Trombetta v. Conkling,

1   626 N.E.2d 653, 654 (N.Y. 1993).  As applied to the facts of this case, it requires that the hit-
2   and-run driver breached a duty owed to each Plaintiff by exposing them to an unreasonable
3   and negligent risk of bodily injury or death, entitling them to recover all damages sustained
4   as a result of the defendant's breach, including mental and physical injuries resulting from
5   witnessing death or serious bodily to a member of the immediate family.  See id. at 654-55
6   (citing Bovsun, 461 N.E.2d at 844).

7            *Immediate Family Member*

8            GEICO contends that it is entitled to summary judgment because Coronel as a fiancée
9   of the deceased, was not an immediate family member.  (Doc. 222 at 6-7.)  GEICO argues
10  that an immediate family member is limited to "a party who was "married or related in the
11  first degree of consanguinity." (Id. at 6.)  GEICO contends that Coronel was neither married
12  nor had a blood relationship with the decedent.  (Id. at 6-7.)

13           Coronel contends that even though no New York case holds that she is eligible as an
14  immediate family member, if presented with the issue, New York would permit her to assert
15  a bystander NIED claim. (Doc. 235 at 8.)  Coronel surmises this because other neighboring
16  states allow for unmarried cohabitants to recover for bystander NIED.  (Id.)  Regarding the
17  children, Coronel alleges that there is no observation requirement for bystander NIED and
18  that the children were contemporaneously aware of their father's death.  (Id. at 8-10.)

19           The Court finds that Coronel is not an immediate family member.  In Bovsun, the
20  court limited bystander NIED to immediate family members, which it determined as:
21  "married or related in the first degree of consanguinity to the injured or deceased person . .
22  . " 461 N.E.2d at 850 n.13.  In Trombetta, the New York Court of Appeals refused to expand
23  the immediate family requirement to those who could demonstrate a blood relationship
24  coupled with significant emotional attachment or the equivalent of an intimate, immediate
25  familial bond.  626 N.E.2d at 655 (stating that the availability of recovery is limited to the
26  strictly and objectively defined class of bystanders).

27           Coronel was neither married to nor had the required blood relationship with the
28  decedent.  Because she was not an immediate family member of the decedent, the Court finds

1   that she is not eligible for bystander NIED.  See Trombetta, 626 N.E.2d at 655-56 (rejecting

2   significant emotional attachment or the equivalent of an intimate, immediate familial bond

3   as meeting the test for a decedent's immediate family; the availability of recovery is limited

4   to a strictly and objectively defined class of bystanders); Santana v. Salmeron, 79 A.D.3d

5   1122, 1123 (N.Y. App. Div. 2010) (stating that a boyfriend was not an injured girlfriend's

6   immediate family member); see also Thompson v Dhaiti, 103 A.D.3d 711, 712-13 (N.Y.

7   App. Div. 2013) (finding that "stepchildren are not immediate family members"); Jun Chi

8   Guan v. Tuscan Dairy Farms, 24 A.D.3d 725, 726 (N.Y. App. Div. 2005) (holding that a

9   grandmother was not an immediate family member of her deceased grandson).  Having found

10  that Coronel was not an immediate family member under New York law, she has not met a

11  required element and was thus not entitled to bystander NIED.

12                        *Awareness of Injury/Death and Zone of Danger*

13          GEICO contends that the minor children have not established their claim to bystander

14  NIED because: 1) New York law requires that the minor children must have witnessed or

15  observed their father being hit in the accident, and 2) they were not in the zone of danger.

16          Coronel, on behalf of the minor children, contends that there is no such observation

17  requirement; the children only must be contemporaneously aware of their father's death.  The

18  minor children further contend that they were in the zone of danger.

19          Regarding A.M. and V.M, the deceased's children who were in the back seat of the

20  car, the Court rejects GEICO's argument that the A.M. and V.M. were required to have

21  witnessed or observed their father being hit in the accident.  The Court finds that there is no

22  observation requirement for bystander NIED.  See Bovsun, 461 N.E.2d at 850 (stating that

23  "[a]lthough plaintiffs in Bovsun did not actually see their husband and father being injured,

24  they do assert their instantaneous awareness that he had been injured as well as their

25  observation of him immediately after he was struck by defendants' automobile.")

26          The Court further finds that A.M. and V.M. were contemporaneously aware of their

27  father's death and therefore met this requirement.  A non-party witness on the scene of the

28  accident, Donald Crowe, testified that immediately after the accident he heard A.M. and

1   V.M. in the car hysterically crying; he also testified that they were scared. (Doc. 235-5 at 5.)

2   However, in-utero E.M. could not have witnessed or been contemporaneously aware of

3   his/her father's death and therefore could not meet this requirement.

4        Next, at issue is whether A.M. and V.M. were in the zone of danger created by the hit-

5   and-run driver.  A.M. and V.M. were in the back seat of the Jetta, strapped into their car

6   seats.  A.M. was 3 and V.M. was 19 months.  GEICO argues that the children in the car were

7   not in the zone of danger because they were not threatened with bodily harm as a

8   consequence of the hit-and-run motorist's negligence.  (Doc. 222 at 7-8.)

9        Coronel relies on Bovsun arguing that the factual similarities from that case to the

10  facts here demonstrate that the children were in the zone of danger.  Coronel recites the

11  Bovsun facts as involving the family vehicle parked on the side of the road when the father

12  was seriously injured by a passing vehicle as he was standing outside the vehicle opening a

13  tailgate window.  (Doc. 235 at 9, citing 461 N.E.2d at 844.)

14       The Court finds that the children were not threatened with bodily harm as a

15  consequence of the hit-and-run motorist's negligence, as the hit-and-run driver's negligence

16  did not cause a collision with the Jetta.  Thus, as this Court construes New York law, the

17  children were not in the zone of danger.  For instance, in Feng v. Metro. Transp. Auth., 285

18  A.D.2d 447, 447-48 (N.Y. App. Div. 2001), a mother took her son to a train station.  Id.

19  While waiting for the train to arrive, the mother sat on a bottom step near the approaching

20  train tracks, and the son stood approximately five feet away facing his mother with his back

21  to the tracks and the oncoming trains. Id.  An approaching train struck the son, pushing him

22  onto his mother. Id.  The court held that the mother was not in the zone of danger or that she

23  was even aware the train was approaching prior to the accident. Id. at 448; see also Zea v.

24  Kolb, 204 A.D.2d 1019, 1019 (N.Y. App. Div. 1994) (holding that mother who was twelve

25  to fifteen feet away from defendant's vehicle when it struck and killed her daughter was not

26  in the zone of danger because "she herself was never threatened with bodily harm in

27  consequence of defendant's negligence"); Gonzalez v. N.Y.C. Hous. Auth., 181 A.D.2d 440,

28  440 (N.Y. App. Div. 1992) (holding that mother who was held back by another passenger

1   in the rear of the elevator when her daughter was killed by elevator doors was not in the zone
2   of danger).

3          Here, Coronel testified that at the time of the accident she was on the right side (the
4   passenger side) of the vehicle and had her hand on the vehicle.   (Doc. 235-2 at 6.)  She
5   stated that when the accident occurred, there was a loud noise and the car violently shook,
6   and moved.  (Id.)  However, the accident report concluded that the Jetta only had dents on
7   the left side on the rocker panel in the lower part of the car and that such dents were caused
8   by the body of the decedent after he was hit and thrust into the car.  (Doc. 235-14 at 7.)
9   Although there was also damage to the driver's side mirror, after talking with all of the
10  witnesses, it was undetermined by the accident report whether the hit-and-run vehicle caused
11  this damage or whether it was caused by the decedent.  (Id.)  No one witnessed the decedent
12  being struck by the hit-and-run driver.  There is no expert testimony that would establish
13  proof that the driver-side mirror was struck by the hit-and-run vehicle.  Based on this lack
14  of evidence, the Court finds that neither A.M., V.M., nor in-utero E.M., were in the zone of
15  danger.

16         The case relied on by Coronel, Bovsun, is distinguished by its facts.  In Bovsun, the
17  father was outside the vehicle working on the rear tailgate when the back of his vehicle was
18  struck by the negligent driver, seriously injuring the father.  461 N.E.2d at 844.  Due to the
19  force of the impact of the vehicles colliding, pinning the father, the mother and daughter were
20  thrown about their vehicle although not seriously injured.  Id.  Thus, the mother and daughter
21  who were in the car had bystander NIED claims; they were in the zone of danger based on
22  the collision and were contemporaneously aware of the father's serious injuries.

23         **B.  Direct Duty NIED**

24         Under New York law, Coronel contends that she, A.M., and V.M. have two ways to
25  establish a NIED claim: the bystander theory or the direct duty theory.  (Doc. 235 at 10.)
26  According to Coronel, under the direct duty theory, a plaintiff has a cause of action for an
27  NIED claim if he or she "suffers emotional distress caused by 'defendant's breach of a duty
28

1  which unreasonably endangered [plaintiff's] own physical safety.'"[2] (Id., citing Baker v.

2  Dorfman, 239 F.3d 415, 421 (2nd Cir. 2000) (applying New York law)).  Coronel further

3  contends that the "direct duty" owed to she, A.M., and V.M. would include generalized

4  duties that one would owe to the public such as operating his or her vehicle safety, prudently,

5  and in accordance with traffic laws.  (Doc. 235 at 10.)

6        GEICO responds that under the direct duty NIED theory, the duty "must be specific

7  to the plaintiff, and not some amorphous, free-floating duty to society."  (Doc. 247 at 5

8  (quoting Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citing Johnson v.

9  Jamaica Hosp., 467 N.E.2d 502 (N.Y. 1984))).)

10       The Court finds the following.  In accordance with New York law, "the definition of

11  the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden

12  declaration reserved for Judges to make prior to submitting anything to fact-finding or jury

13  consideration." Palka v. Servicemaster Mgmt. Services Corp., 634 N.E.2d 189, 192 (N.Y.

14  1994).  New York law narrowly defines the scope of an alleged tortfeasor's duty in order to

15  ensure that the legal consequences of wrongs are limited to a controllable degree. See Waters

16  v. New York City Housing, 505 N.E.2d 922, 924 (N.Y. 1987) (further citation and quotation

17  omitted).

18       Thus, the Court first must determine the scope of the duty, that is, whether the hit-and-

19  run driver owed a direct duty to Coronel, A.M., and V.M.  See In re Air Crash Disaster at

20  Cove Neck, Long Island, N.Y. on Jan. 25, 1990, 885 F. Supp. 434, 439 (E.D.N.Y. 1995)

21  (stating that a prerequisite to recovering for a claim of emotional injury is the existence of

22  a duty owed directly to the plaintiffs); Kelly v. Chase Manhattan Bank, 717 F. Supp. 227,

23  235 (S.D.N.Y. 1989) ("recovery for [direct duty] negligent infliction of emotional distress

24  'is circumscribed to unique facts where a special duty is owed.'") (quoting Rubinstein v.

25  New York Post Corp., 488 N.Y.S.2d 331, 334 (N.Y. Sup. Ct. 1985)).  Next, if the hit-and-run

26

27

28       [2]The Court finds that in-utero E.M. could not be put into emotional fright at the time
of the accident, and thus does not have a potential cause of action for direct duty NIED.

1  driver owed Coronel, A.M., and V.M. a direct duty, the Court then determines whether the

2  driver breached that duty and unreasonably endangered their physical safety.

3      "The gravamen of [a direct duty NIED] claim is whether plaintiffs can prove the

4  defendant owed them a specific duty, rather than a general duty to society." See Cove Neck

5  Air Crash Disaster, 885 F. Supp. at 439 (citing Jamaica Hosp., 467 N.E.2d at 503-04).  In

6  Battalla v. State of New York, 176 N.E.2d 729 (N.Y. 1961), New York first recognized

7  direct duty NIED claims.  In that case, an infant plaintiff recovered emotional distress

8  damages against a state-owned ski resort because a negligent employee placed the child

9  plaintiff in a chair lift without securing the child's safety belt and the child suffered

10  emotional trauma. Id. at 730.  However, in Jamaica Hosp., 467 N.E.2d at 503-04, the parent

11  plaintiffs were denied emotional distress damages when their 4-month-old infant was

12  kidnapped from the defendant hospital, the New York Court of Appeals finding that the

13  hospital's specific duty ran to the kidnapped infant, not the parents.  In Cove Neck Air Crash

14  Disaster, 885 F. Supp. at 439, when a plane crashed into a residential neighborhood, the

15  district court found that the airline's duty ran to its passengers on the plane, denying

16  emotional distress damages to those on the ground who happened to be in the wrong place

17  at the wrong time.  Similarly, in Mortise, when the Mortises, who were out 4-wheeling and

18  accidentally ran into a national guard exercise suffering emotional distress damages, the

19  Second Circuit denied damages to the Mortises finding that the Guard only had a generalized

20  duty to prevent unreasonable risks of harm to passers-by, and that this duty was not specific

21  to the Mortises. 102 F.3d at 696.

22      Based on the above principles, the Court rejects Coronel's argument that the hit-and-

23  run driver owed a "direct duty" to she, A.M., and V.M. because the hit-and-run driver also

24  owed generalized duties to the public such as operating his or her vehicle safety, prudently,

25  and in accordance with traffic laws. The Court finds that the hit-and-run driver's duty was

26  not specific to Coronel, A.M. or V.M.  Therefore, Coronel, A.M. and V.M. would not be

27  entitled to emotional distress damages under the legal theory of direct duty NIED.

28  ///

1

## II.  Arizona Bad Faith

2        Under Arizona law, Plaintiffs establish bad faith by an insurer by showing that the

3   insurer acted unreasonably. The test for reasonableness contains two elements.  Plaintiffs

4   must show that (1) the insurer acted unreasonably and (2) either knew or was conscious of

5   the fact that its conduct was unreasonable. See Deese v. State Farm Mut. Auto. Ins. Co., 172

6   Ariz. 504, 507, 838 P.2d 1265, 1268 (1992). The first prong of the test for bad faith is an

7   objective test based on reasonableness. The second prong is a subjective test, requiring the

8   plaintiff to show that the insurer committed consciously unreasonable conduct.  See Trus

9   Joist Corp. v. Safeco Ins. Co. of Am., 153 Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986)).

10        First, GEICO moves for summary judgment on Plaintiffs' Arizona bad faith allegation

11   that GEICO unreasonably applied New York law to their NIED tort claims against the

12   hit-and-run driver.  (Doc. 222 at 12-14 (citing Doc. 54, First Amended Complaint, at 6-7.)

13        GEICO is entitled to summary judgment on Plaintiffs' allegation.  Based on the

14   decedent's GEICO Uninsured Motorist coverage, the Court has already found that New York

15   law applies to Plaintiffs' NIED tort claims against the hit-and-run driver.  (Doc. 116.)

16        Next, GEICO moves for summary judgment on Plaintiffs' Arizona bad faith allegation

17   that GEICO unreasonably denied insurance coverage to Coronel, A.M., and V.M. for their

18   NIED tort claims against the hit-and-run driver.  (Doc. 222 at 12-14.)

19        Based on the Court's foregoing discussion applying New York law to Plaintiffs'

20   NIED allegations, GEICO is entitled to summary judgment on this allegation.  See Lasma

21   Corp. v. Monarch Ins. Co. of Ohio, 159 Ariz. 59, 63, 764 P.2d 1118, 1122 (1988) (stating

22   that where the insurance company has a reasonable basis for denying a claim, or where the

23   claim is fairly debatable, a cause of action for bad faith will not lie); see also Noble v. Nat'l

24   Am. Life Ins. Co., 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981) (stating that in order to

25   support a claim of bad faith, Arizona law requires plaintiffs to set forth facts which indicate

26   that defendant lacked a reasonable basis for denying plaintiffs' claims).  The Court has

27   evaluated the undisputed facts, evaluated the disputed material facts in favor of Plaintiffs, the

28   non-movant, and applied those facts to controlling New York law finding that none of the

1   Plaintiffs have stated a cause of action for either bystander NIED or direct duty NIED

2   damages.

3       Finally, Coronel argues that even if the Court finds that neither she nor the minor

4   children are entitled to coverage for bystander NIED or direct duty NIED, GEICO is still

5   liable for bad faith because it unreasonably processed and handled their NIED claim. (Doc.

6   235 at 12 (citing Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 238, 995 P.2d 276,

7   280 (2000) (finding that an insurer can be liable for bad faith regarding its investigation,

8   evaluation and processing of the claim)).)

9       Regarding proof of bad faith as applied to an insurer's claims handling process, the

10  reasonableness test is applied to a consideration of how the insurer allegedly mishandled the

11  claim. See Zilisch, 196 Ariz. at 238, 995 P.2d at 280 (stating that "[t]he appropriate inquiry

12  is whether there is sufficient evidence from which reasonable jurors could conclude that in

13  the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and

14  either knew or was conscious of the fact that its conduct was unreasonable.")

15      Plaintiffs first allege that GEICO's Claims Code of Conduct and its Claims Manual

16  establish requirements and procedures for its claims personnel, the violation of which

17  presents evidence of unreasonable claims handling. (Doc. 235 at 3-4.)

18      The Court rejects Plaintiffs' argument that GEICO's Claims Code of Conduct or its

19  Claims Manual creates a standard of conduct the violation of which presents evidence of

20  unreasonable claims handling. See Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (stating

21  that evidence that claims personnel failed to follow the procedures stated in the Agency's

22  claims manual was not the same as a failure to follow a regulation; finding that the claims

23  manual had no legal force and did not bind the Agency); Tonnemacher v. Sasak, 155 F.R.D.

24  193, 194 (D. Ariz. 1994) (finding that internal manuals do not define industry standards).

25  The Court finds that any deviation by GEICO claims personnel from the GEICO's claims

26  code or claims manual is not a *per se* breach of the duty of good faith. The proper inquiry

27  before this Court is whether the insurer acted unreasonably and either knew or was conscious

28  of the fact that its conduct was unreasonable. See Deese, 172 Ariz. at 507, 838 P.2d at 1268.

1  It is undisputed that the time period between the accident and December 17, 2009,

2  GEICO investigated, processed, and paid $100,000 to the insured based on uninsured

3  motorist coverage for the wrongful death of the Eduardo Mediavilla.  (See Claim File, Doc.

4  235-13.)  The wrongful death claim was settled for the $100,000 policy limits with $28,333

5  to A.M., $28,333 to V.M., and $28,333 to E.M. (Id. at 24.)  In addition, decendent's mother,

6  Luz Mediavilla, received $7,500, and the father, Eduardo Mediavilla, received $7,501. (Id.)

7  Plaintiffs do not raise bad faith allegations regarding GEICO's investigation,

8  processing and payment of wrongful death benefits; Plaintiffs allege that GEICO

9  unreasonably handled their claim for NIED injuries arising out of the accident.  Plaintiffs

10  raise the following allegations: GEICO personnel never informed Coronel about possible

11  coverages of the policy applicable to the accident regarding claims that she or her children

12  may have; Adjuster Greg Ybarra told Coronel that she had no claim she could make for the

13  accident; that Ybarra was improperly trained; that GEICO wrongfully concluded that Coronel

14  did not have a valid bystander NIED claim; that Don Truitt advised GEICO claims personnel

15  not to inform Coronel of the December 5, 2007 coverage decision; that GEICO claims

16  personnel informed Coronel that A.M. and V.M. had valid bystander NIED claims and that

17  Coronel needed to provide required damages information for evaluation and settlement

18  purposes; that GEICO was estopped from subsequently changing its coverage decision that

19  A.M. and V.M. did not have valid bystander NIED claims; GEICO improperly researched

20  Coronel's private media in order to conclude that the children were asleep when the accident

21  happened; and that GEICO claims personnel improperly concluded that Coronel had not

22  provided sufficient information about whether the children were asleep when the accident

23  happened.  (Doc. 235 at 5-7.)

24  GEICO contends that the evidence offered by Plaintiffs is, at worst, errors in the

25  claims handling process, and at best, components of a reasonable investigation aimed at

26  determining the proper law under which to analyze the claims and the facts of the incident.

27  (Doc. 247 at 8.)  GEICO further contends that in light of the disputed facts and the nature of

28  the claim, its actions were reasonable.  (Id.)  During its evaluation and processing, GEICO

1    argues that it was neither estopped nor waived its opportunity to deny NIED coverage to the

2    Plaintiffs.  (Id. at 9-10.)

3         *Plaintiffs' Estoppel/Waiver Arguments*

4         The Court first considers Plaintiffs' estoppel/waiver arguments.  At issue is whether

5    GEICO changed its coverage position regarding NIED damages for A.M. and V.M., and if

6    so whether estoppel or waiver apply to its change in position.  (Doc. 235 at 4-6, 14.)

7    Assuming that GEICO did change its coverage position, Plaintiffs further argue that such a

8    change was not only subject to estoppel and waiver but was unreasonably taken in bad faith.

9    (Id.)

10        First, as to whether GEICO changed its coverage position during the processing of this

11   claim, Plaintiffs argue that even if GEICO did not expressly inform Coronel of its claims and

12   coverage decisions regarding A.M. and V.M., GEICO's conduct caused its claim personnel

13   in Arizona to understand that it did not contest the validity of A.M.'s and V.M.'s bystander

14   NIED claims under New York law, and that it only needed sufficient documentation of the

15   children's injuries to pay and settle their claims.  (Doc. 235 at 14.)  In further support of

16   GEICO's change in position, Plaintiffs contend that GEICO directed its attorney handling

17   the settlement of the wrongful death claim to confirm its position regarding A.M.'s and

18   V.M.'s bystander NIED claims to the "Best Interests Attorney" appointed by the court to

19   protect the interests of the minor children.  (Doc. 240-1.)  Consequently, Plaintiffs contend

20   that GEICO was both estopped from changing its coverage position and that GEICO's

21   conduct waived its coverage defenses.  (Doc. 235 at 15.)

22        Although GEICO maintains that it never definitively informed Coronel that A.M. and

23   V.M were entitled to bystander NIED damages, it nevertheless contends that Plaintiffs have

24   not identified how they were prejudiced by any change in GEICO's coverage position.  (Doc.

25   247 at 9.)  GEICO maintains that Plaintiffs cannot establish prejudice because they were still

26   able to bring this lawsuit and argue to the Court that A.M. and V.M have claims for

27   bystander NIED and direct duty NIED.  (Id. at 9, (citing Merchants Mut. Ins. Grp. v.

28   Travelers Ins. Co., 24 A.D.3d 1179, 1182-83 (N.Y. App. Div. 2005) (stating that under New

1  York law the insured must show the element of prejudice in order to establish a claim of

2  estoppel)).)

3       Regarding waiver, GEICO contends that it does not apply. (Doc. 247 at 9.) Under

4  New York law, waiver "is the voluntary and intentional relinquishment or abandonment of

5  a known existing legal right" with or without any prejudice to the opposing party.  (Id.,

6  (citing Waldman v. Cohen, 125 A.D.2d 116, 122 (N.Y. App. Div. 1987)).) GEICO argues

7  that there is no evidence that it intentionally relinquished any right during the course of its

8  processing and evaluation of A.M.'s and V.M.'s NIED claims.

9       The Court has previously held that New York law applies to the contractual aspects

10  of the insurance coverage issues involved in this case. (Doc. 116.) Likewise, New York law

11  also applies to whether GEICO is precluded from asserting coverage defenses regarding

12  Plaintiffs' breach of contract theory.  (Doc. 223-1 at 59.)  As to estoppel, the Court agrees

13  with GEICO that even if GEICO changed its coverage position regarding A.M. and V.M.,

14  Plaintiffs cannot establish the required element of prejudice because they were still able to

15  bring this lawsuit and argue to the Court that A.M. and V.M have claims for bystander NIED

16  and direct duty NIED. See Merchants Mut., 24 A.D.3d at 1182-83 (stating that the insured

17  must show the element of prejudice in order to establish a claim of estoppel).  Similarly,

18  Plaintiffs cannot establish that GEICO waived its rights because there is no evidence of

19  GEICO intentionally relinquishing any coverage defense during the course of its processing

20  and evaluation of A.M.'s and V.M.'s NIED claims.

21       Absent any application of estoppel or waiver to GEICO's change in coverage position,

22  the Court further finds that GEICO is not subject to bad faith liability. See Noble, 128 Ariz.

23  at 189, 624 P.2d at 867 (stating that in order to support a claim of bad faith, Arizona law

24  requires plaintiffs to set forth facts which indicate that defendant lacked a reasonable basis

25  for denying plaintiffs' claims); see also Knoell v. Metropolitan Life Insurance Co., 163 F.

26  Supp.2d 1072, 1076 (D. Ariz. 2001) (stating that insurance companies can challenge claims

27  that are fairly debatable without having acted in bad faith). There is no evidence that GEICO

28  changed its position in bad faith such as, for example, with the intent of willfully interfering

1  with what it believed to be A.M.'s and V.M.'s entitlement to coverage. GEICO took a

2  justifiable position that under New York law, A.M. and V.M were excluded from NIED

3  coverage, and the record reflects no bad faith in GEICO taking this position.

4  *Plaintiffs' Other Bad Faith Allegations*

5  As to Plaintiffs' other allegations of bad faith, on some points, Plaintiffs allege that

6  they were not informed about possible coverage arising out of the accident, and on other

7  points, Plaintiffs acknowledge being informed by GEICO that A.M. and V.M. had possible

8  bystander NIED claims and that Coronel needed to provide required damages information

9  for evaluation and settlement purposes. This is not evidence of bad faith; it is GEICO claims

10  personnel in the midst of evaluating and making a coverage decision regarding A.M.'s and

11  V.M.'s bystander NIED claims. Adjuster Ybarra's statement to Coronel that she did not have

12  a bystander NIED claim is not evidence of bad faith, as this Court has already found.

13  Next, regarding GEICO's investigation and evaluation of the A.M.'s and V.M.'s

14  bystander NIED claim, including whether the children were asleep at the time of the

15  accident, the Court has already found in Plaintiffs' favor that there is no observation

16  requirement for bystander NIED in New York. Whether the children were asleep is not

17  dispositive, as the Court has already ruled.

18  Next, the Court considers GEICO's delayed 4-year investigation and its mid-stream

19  change in its coverage position. Although GEICO was not legally estopped from changing

20  its coverage position, it is part of the Court's evaluation as to whether the insurer's delayed

21  handling of the claim and its change in position constitutes a jury question on the issue of bad

22  faith or whether the Plaintiffs have failed to come forward with sufficient evidence from

23  which reasonable jurors could conclude that GEICO: (1) acted unreasonably; and (2) knew

24  or was conscious of the fact that its conduct was unreasonable.

25  First, the Court finds that GEICO's delayed 4-year investigation and evaluation could

26  be found unreasonable by a jury. Regardless of the concurrent wrongful death claim and the

27  choice of law issues, such an extended time frame to adjust a claim may be found negligent

28  and objectively unreasonable. See Zilisch, 196 Ariz. at 238, 995 P.2d at 280 (stating that the

1  "carrier has an obligation to immediately conduct an adequate investigation, act reasonably

2  in evaluating the claim, and act promptly in paying [or denying] a legitimate claim).  As to

3  whether Plaintiffs have come forward with sufficient evidence from which reasonable jurors

4  could conclude that GEICO knew or was conscious of the fact that its conduct was

5  unreasonable, that issue is a close one and open to a jury determination.  Thus, the Court will

6  deny GEICO's motion for summary judgment on bad faith.

7      **III.  Punitive Damages**

8          GEICO argues that it is entitled to summary judgment as to Plaintiffs' punitive

9  damages claim because Plaintiffs are unable to establish that it acted with the requisite ill

10  intent to support punitive damages.  (Doc. 222 at 14-15.)  GEICO contends that its conduct

11  in this case is insufficient for an award of punitive damages.  (Id.)

12          Plaintiffs contend that the evidence submitted and discussed strongly supports a jury's

13  decision that GEICO's investigation and evaluation of the claim was wrong and that its

14  October 5, 2011 Claim Denial letter misrepresented the evidence in the file.  (Doc. 235 at

15  15.)  Therefore, GEICO acted to serve its own interests, having reason to know and

16  consciously disregarding a substantial risk that its conduct might significantly injure the

17  rights of others.  (Id. at 15-16.)

18          In a bad faith tort case against an insurance company, punitive damages may only be

19  awarded if the evidence reflects "something more" than the conduct necessary to establish

20  the tort. Rawlings v. Apodaca, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986).  In Rawlings,

21  the Arizona Supreme Court explained the parameters of punitive damages as follows:

22              We restrict [the availability of punitive damages] to those cases in
       which the defendant's wrongful conduct was guided by evil motives. Thus, to
23     obtain punitive damages, plaintiff must prove that defendant's evil hand was
       guided by an evil mind. . . . [P]unitive damages will be awarded on proof from
24     which the jury may find that the defendant was 'aware of and consciously
       disregard[ed] a substantial and unjustifiable risk that' significant harm would
25     occur.

26  151 Ariz. at 162, 726 P.2d at 578 (citations omitted).  Summary judgment on the issue of

27  punitive damages must be denied if a reasonable jury could find the requisite evil mind by

28  clear and convincing evidence; summary judgment should be granted if no reasonable jury

1   could find the requisite evil mind by clear and convincing evidence. Thompson v. Better-Bilt
2   Aluminum Prod. Co., 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992). The court construes the
3   evidence and all reasonable inferences drawn from the evidence in a light most favorable to
4   the non-moving party.  Id.

5        Even though Plaintiffs point to GEICO's investigation regarding whether A.M. and
6   V.M. were asleep when the accident happened as if a dispositive issue, the Court has already
7   determined that this issue is largely irrelevant.  Therefore, such evidence does not support
8   clear and convincing evidence of evil mind regarding GEICO's investigation of the claim.
9   Rather, the Court finds that Plaintiffs have failed to come forward with the "something more"
10  evidence that would support an award of punitive damages.  Therefore, the Court will grant
11  GEICO's motion for summary judgment on the issue of punitive damages.

12       **IV.  GEICO's Motion to Seal**

13       GEICO moves the Court to seal Exhibits 16, 17, and 18, which are now lodged with
14  the Court under seal. (Doc. 252.) Originally, GEICO produced these documents to Plaintiffs
15  as confidential documents subject to a Protective Order.  Plaintiffs sought to file them under
16  seal as part of their Separate Statement of Facts in Support of their Response to Defendant's
17  Motion for Summary Judgment. (Doc. 234.) The Court denied Plaintiffs' motion without
18  prejudice because they had not followed the District's Local Rules for filing documents
19  under seal.  (Doc. 249.)  The Court reiterated that a party seeking to seal documents attached
20  to a dispositive motion "must 'articulate compelling reasons supported by specific factual
21  findings'" that are sufficient to outweigh the "strong presumption in favor of [public] access"
22  to court documents. Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178-79 (9th
23  Cir. 2006) (alteration omitted) (quoting Folz v. State Farm Mut. Auto. Ins. Co., 331 F.3d
24  1122, 1135 (9th Cir. 2003).

25       GEICO moves to seal the documents as proprietary information that is a trade secret.
26  (Doc. 252.)  The documents at issue are its Claim Manual (Ex. 16), its Code of Conduct (Ex.
27  17), and the deposition of its expert, Tony Cannon, in which he references the protected
28  materials (Ex. 18).  (Id.)  In support, GEICO states that these documents are the means by

1    which it adjusts its files, and constitutes an office management procedure that is confidential.

2    GEICO further states that the insurance industry is very competitive and that these materials

3    are the key to its business and the method by which it delivers competitive customer service

4    to its customers. (Id.) If such information is revealed to the public, GEICO claims it will lose

5    its claim to trade secret status in future matters, some of which may be

6    commercial/contractual and unrelated to this case or other bad faith claims. (Id.)

7          The Court finds that GEICO has articulated compelling reasons supported by specific

8    factual findings that are sufficient to outweigh the strong presumption in favor of public

9    access to court documents.  GEICO's motion to seal will be granted.

10                                    **CONCLUSION**

11         Accordingly, on the basis of the foregoing,

12         **IT IS HEREBY ORDERED** granting GEICO's motion for summary judgment

13   regarding breach of contract and punitive damages.  (Doc. 222.)

14         **IT IS FURTHER ORDERED** denying GEICO's motion for summary judgment

15   regarding insurance bad faith.  (Doc. 222.)

16         **IT IS FURTHER ORDERED** granting GEICO's motion to seal.  (Doc. 252.) The

17   Clerk of Court shall file under seal Doc. 251, Exhibits 16, 17, and 18, that were lodged under

18   seal in Plaintiffs' Response to GEICO's motion for summary judgment.

19         **IT IS FURTHER ORDERED** that by **Friday, October 16, 2015**, GEICO shall file

20   on the public record a redacted version of Exhibit 18.

21         **IT IS FURTHER ORDERED** setting the Final Pretrial Conference for **Monday,**

22   **December 7, 2015, at 2:00 p.m.** in Courtroom 401, on the fourth floor of the Sandra Day

23   O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003.  The

24   attorneys who will be responsible for the trial of the case shall attend the Final Pretrial

25   Conference.  Counsel shall bring their calendars so that trial scheduling can be discussed.

26         **IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys

27   who will be responsible for the trial of the lawsuit shall prepare and sign a joint Proposed

28   Pretrial Order and file it by **Friday, November 20, 2015.**

1   **IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall

2   include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto.

3   Statements made shall not be in the form of a question, but should be a concise narrative

4   statement of each party's contention as to each uncontested and contested issue.  The parties

5   shall also email the joint Proposed Pretrial Order to the Chambers mailbox at

6   mcnamee_chambers@azd.uscourts.gov in either Word Perfect or Word format.

7   **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that

8   the Court will not allow the parties to offer any exhibits, witnesses, or other information that

9   were not previously disclosed in accordance with the provisions of this Order and/or the

10   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for

11   good cause.

12   **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the

13   Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.  In

14   addition, the parties shall exchange marked copies of all exhibits to be used at trial.  While

15   meeting to exchange exhibits, the parties shall eliminate any duplicate exhibits.  The

16   numbering of the exhibits as listed in the joint Proposed Pretrial Order shall correspond to

17   the numbering of the exhibits at trial.

18   **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in

19   limine no later than **Friday, October 30, 2015**.  Responses to motions in limine are due

20   **Friday, November 13, 2015**.  The motions and responses must be concise and shall not

21   exceed three (3) pages in length.  No replies will be permitted.  Each motion in limine shall

22   include the legal basis supporting it and the proposed language for the order in limine being

23   sought from the Court.  Counsel shall be prepared to address the merits of all motions in

24   limine at the Final Pretrial Conference.

25   **IT IS FURTHER ORDERED** directing the parties to complete the following tasks

26   by the time of the filing of the Proposed Pretrial Order if they intend to try the case before

27   a jury:

28   (1)   The parties shall <u>jointly</u> file a short description of the case to be read to the

jury.

(2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions.  The voir dire questions shall be drafted in a neutral manner.  To the extent possible, the parties shall stipulate to the proposed voir dire questions.  If the parties have any disagreement about a particular question, the party or parties objecting shall state the reason for their objection below the question.

(3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions.  The instructions shall be accompanied by citations to legal authority.  If a party believes that a proposed instruction is a correct statement of the law, but the facts will not warrant the giving of the instructions, the party shall so state.  The party who believes that the facts will not warrant the particular instruction shall provide an alternative instruction with appropriate citations to legal authority.

(4)     Each party shall submit a proposed form of verdict to be given to the jury at the end of the trial.

**IT IS FURTHER ORDERED** directing the parties to submit their proposed joint statement of the case, joint voir dire questions and stipulated jury instructions in .pdf format, and their proposed form of verdict in Word Perfect or Word format to the Chambers mailbox, at mcnamee_chambers@azd.uscourts.gov.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed findings of fact and conclusions of law by the same date that the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement.

**IT IS FURTHER ORDERED** that this Court views compliance with the provisions of this Order as critical to its case management responsibilities and the responsibilities of the ///

1    parties under Rule 1 of the Federal Rules of Civil Procedure.

2         DATED this 24th day of September, 2015.

3

4    _____

5                    Stephen M. McNamee
                 Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9 , ) No. CV -PHX-SMM
)
10 Plaintiff, )
)
11 vs. ) **PROPOSED PRETRIAL FORM**
) **OF ORDER**
12 )
)
13 , )
Defendant. )
14 )
)
15 _____ )

16      Pursuant to the Scheduling Order, the following is the joint Proposed Pretrial Order

17 to be considered at the Final Pretrial Conference set for _____ at

18 _____ before Judge McNamee.

19     **A.   TRIAL COUNSEL FOR THE PARTIES.**

20     (Include mailing address, office phone, fax number, and email address).

21     Plaintiff(s):

22     Defendant(s):

23     **B.   STATEMENT OF JURISDICTION/VENUE.**

24     Cite the statute(s) or rule(s) which gives this Court jurisdiction and venue.

25     (*e.g.,* Jurisdiction in this case is based on diversity of citizenship under Title 28

26     U.S.C. § 1332.)

27     **C.   NATURE OF ACTION**.

28     Provide a concise statement (no more than one page) of the type of case, the

cause of the action, and the relief sought.

(*e.g.,* - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

**D.   CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(*e.g.,* To prevail on this products liability case, the plaintiff must prove the following elements . . . .)

(*e.g.,* To defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

**E.   STIPULATIONS AND UNDISPUTED FACTS AND LAW.**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

3. The following issues of law are uncontested and stipulated to by the parties:

**F.   CONTESTED ISSUES OF FACT.**

The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact).

*E.g.,* Issue # 1: Whether Plaintiff used due care.

*Plaintiff Contends*:  Plaintiff looked both ways before stepping into the street ...

*Defendant Contends*: Plaintiff was chasing a ball and darted out into the street

without looking . . .

**G.  ISSUES OF LAW IN CONTROVERSY**.

List briefly any points of law (substantive, evidentiary, or procedural) concerning the measure and kind of relief requested that is or may be reasonably expected to be in controversy.

**H.  LIST OF WITNESSES**.

Provide a separate list for each party of all witnesses whom the party will call or may call in person or through deposition, except witnesses who may be called only for impeachment or rebuttal.  A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) will be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.  If any additional witnesses come to the attention of counsel prior to the trial, a supplemental list and summary must be prepared and filed with the Court.  This supplemental list must include the reason why the witness' name was not set forth in the Proposed Pretrial Order.  If a witness will appear by deposition only, the party calling the witness will give notice of the pages to be read on the date the Proposed Pretrial Order is filed with the Court.  (Do not include deposition pages in the Proposed Pretrial Order.)

**I.   LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be

offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(*E.g.,* City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(*E.g.*, Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

**J.   PROBABLE LENGTH OF TRIAL.**

**K.   JURY DEMAND**.

State whether any party has demanded a jury trial of all or any of the issues and, if so, whether each adversary accepts or contests the demand for jury trial.

**For a Bench Trial**

**1.   PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**For a Jury Trial**

**2. STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**M.   CERTIFICATIONS**. The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

1    3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been

2    disclosed and shown to opposing counsel.

3    4. The parties have complied in all respects with the mandates of the Court's Rule

4    16 Order and Order Setting Final Pretrial Conference.

5    5. Unless otherwise previously ordered to the contrary, the parties have made all

6    of the disclosures required by the Federal Rules of Civil Procedure.

7    **APPROVED AS TO FORM AND CONTENT**:

8    _____        _____

     Attorney for Plaintiff                              Attorney for Defendant

9    

10   Based on the foregoing,

11   **IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties

12   is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

13   DATED this _____ day of _____, ____.

14   _____

     Stephen M. McNamee
     Senior United States District Judge

- 5 -